UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CHARLES WILLIAM EBERHART,<br>Defendant. | Case No. 13-cr-00313-PJH-1<br><br>**ORDER DENYING APPLICATION FOR IMMEDIATE RELEASE**<br><br>Re: Dkt. No. 59 |

Before the court is the emergency application for immediate release filed by represented defendant Charles William Eberhart in light of the increasing risks to health that the coronavirus disease ("COVID-19") poses to incarcerated persons. The government opposes the application for release, and the Probation Office has provided the court with a response to defendant's application. On March 25, 2020, defendant filed a reply brief. The court determines that the matter is suitable for decision without a hearing and is submitted on the papers. Given the dynamic nature of the COVID-19 pandemic, the court is continually advised of developments affecting incarcerated defendants and the Bureau of Prisons ("BOP") by the United States Marshal, the Pretrial Services Office, the Probation Office, the Federal Public Defender's Office, the government and others. In the absence of a specific showing that compassionate release is warranted in this case, the application for immediate release is DENIED.

On December 16, 2013, the court sentenced defendant to 71 months in custody and three years of supervised release on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On July 8, 2019, defendant was released from custody and began his term of supervised release. On November 21, 2019, the court

1 ordered issuance of an arrest warrant on a petition alleging violations of supervised
2 release conditions.   On March 4, 2020, defendant admitted to committing a new crime
3 and being found in possession of a firearm in violation of his supervised release.  The
4 court sentenced defendant to five months in custody and 31 months of supervised
5 release with the added special condition that defendant reside in a residential reentry
6 center for 90 days.  Defendant now seeks immediate release from custody due to the
7 COVID-19 pandemic.

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). Defendant seeks modification of his sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), which added a provision to allow defendants, not only the Director of the BOP, to file a motion for reduction of sentence after exhausting administrative remedies or waiting 30 days after the warden's receipt of a request. Section 3582(c)(1)(A)(i) now  provides that the court may reduce an imposed term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," after considering the applicable factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

On the threshold exhaustion or 30-day requirement, defendant does not represent that he has exhausted his administrative remedies with the BOP under § 3582(c)(1)(A)(i), but asserts that the exhaustion requirement should be deemed satisfied or entirely dispensed with due to the BOP's failure to address the dangers of the pandemic, or that

the 30-day lapse requirement should be waived as futile in light of the pressing public health concerns. Defendant fails to demonstrate the futility of pursuing administrative remedies to excuse his failure to exhaust, or even seek administrative remedies at all, in light of the government's demonstration that Santa Rita Jail authorities have implemented an outbreak control plan, and defendant's concessions that no COVID-19 cases have yet been reported at Santa Rita Jail where he is incarcerated, dkt. 62 at 3–4, that the BOP has issued an action plan and that state officials have begun to identify state inmates for early release. *Cf. Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (waiving exhaustion requirement for § 2241 habeas petition to change restitution payment schedule as futile where denial of relief was based on official BOP policy). Because defendant has not satisfied the exhaustion requirement, the court lacks authority to grant relief under § 3582(c)(1)(A)(i).

Alternatively, defendant's request for immediate release is denied on the separate grounds that defendant fails to demonstrate that the § 3142(g) factors considered at the time detention was ordered, or the § 3553(a) factors considered by the court at the time of sentencing only three weeks ago, have materially changed, such as the need to provide defendant with training or medical care, where he has not reported a serious illness or medical condition. Under the applicable policy statement of the Sentencing Commission, a reduction in sentence under § 3582(c)(1)(A) requires a determination that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" governing pretrial release or detention. U.S.S.G. § 1B1.13(2). Here, not only did the court order detention pending the supervised release revocation proceedings upon determining that defendant was a danger to the community and a flight risk under the Bail Reform Act, dkt. 40, but defendant admitted at the time of sentencing to committing a crime while on supervised release, namely brandishing a firearm at two victims after a car collision, and to being a felon in possession of a firearm.

Given defendant's criminal history and supervised release status at the time of the alleged offenses, his case is distinguishable from *United States v. Stephens,* --- F. Supp.

3d ---, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), cited by defendant in support of his application for immediate release. There, the court granted reconsideration of a detention order, in light of the changing nature of the COVID-19 pandemic since the time the defendant was remanded into custody, and ordered pretrial release upon finding that the defendant established that he did not pose a danger to the community where, among other considerations, he had no prior convictions that involved violent conduct or gun charges. The court in *Stephens* granted pretrial release on the separate ground that the public health crisis limited legal visits to prisons and impacted the defendant's ability to prepare a defense. *Id.,* 2020 WL 1295155, at *2-3 (citing 18 U.S.C. § 3142(i)). Where defendant has a history of firearms offenses and cannot assert a need to prepare a defense after the sentence has been imposed, neither of the factors found in *Stephens* weighs in favor of defendant upon consideration of § 3142(g) or the applicable § 3553(a) factors on defendant's application for immediate release, particularly the need for adequate deterrence and the need to protect the public from further crimes of the defendant.

Furthermore, defendant fails to show that concerns about the spread of COVID-19, without other factors to consider in his particular case, present extraordinary and compelling reasons that warrant modification of his sentence and immediate release from custody pursuant to § 3582(c)(1)(A), which requires that a reduction of sentence under this provision be "consistent with applicable policy statements issued by the Sentencing Commission." General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13. The relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n. 1(A). As defendant does not assert that he is suffering from a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A). The court notes that the Sentencing Commission's policy statement has not been amended since the effective date of the First Step Act to refer to § 3852(c)(1)(A) motions filed by defendants. While the parties do not raise a dispute as to whether U.S.S.G. § 1B1.13 remains binding on the statutory compassionate release provision after its amendment by the First Step Act, district courts disagree whether the policy statement applies to motions for compassionate release filed by defendants. *Compare United States v. Beck*, --- F. Supp. 3d ---, 2019 WL 2716505 at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)") *with United States v. Shields*, 2019 WL 2359231 at *4 (N.D. Cal. June 4, 2019) (rejecting argument that the court may disregard § 1B1.13 because it has not yet been amended pursuant to the First Step Act), *reconsideration denied* (N.D. Cal. June 27, 2019). In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions for reduction of sentence filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the court follows the guidance of the Sentencing Commission limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release pursuant to § 3582(c)(1). *See Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)).

To the extent that defendant seeks a designation recommendation by the court to BOP under § 3621(b)(4) to release him from Santa Rita Jail to a halfway house or home

confinement, the court has no authority to designate the place of confinement. The Ninth Circuit recognizes that "[t]he Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citing 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment.")). The recommendations of the sentencing court to the BOP for where the sentence should be served are only given non-binding weight. *Id.* "'While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons.'" *Id.* (quoting *United States v. Dragna,* 746 F.2d 457, 458 (9th Cir. 1984) (per curiam)). Under Section 3621(b), the BOP is authorized to "designate any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable," including RRCs. *See Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008) ("Under 18 U.S.C. § 3621(b), the BOP has authority to designate the place of an inmate's imprisonment."). As a discretionary matter, the court declines to make a recommendation to the BOP concerning halfway house placement, particularly given that residing in a residential reentry center has been ordered as a condition of supervised release.

For the reasons set forth above, defendant's application for immediate release is DENIED. The global pandemic poses extraordinary challenges not only for each individual but for every institution charged with responsibility and oversight in matters affecting public health and safety, particularly in the criminal justice system. The court will continue to monitor the impact of COVID-19 on defendants whom it has ordered into federal custody.

**IT IS SO ORDERED.**

Dated: March 25, 2020

/s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge